UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Richard Bell,

Petitioner,

vs. REPORT AND RECOMMENDATION

United States Parole Commission,
and C. Reese, Warden,

Respondents. Civ. No. 00-289(RHK/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 27th day of October, 2000.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2241. The Petitioner argues that the United States Parole Commission ("Parole Commission") revoked his parole through a process that violated Parole Commission Regulations, and his constitutional right to due process of law.

The Petitioner appears pro se, and the Respondent has appeared by Paul A. Murphy, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

FILED OCT 27 2000
JUDGMENT ENTERED
DEPUTY CLERK

37

## II. Factual and Procedural History

The Petitioner was sentenced to an eighteen-year prison term on April 28, 1983, by the United States District Court for the Western District of Missouri. See, Petition for Writ of Habeas Corpus, at 2. He was paroled to community supervision on June 5, 1998. Prior to that date, he had been previously paroled on four occasions but, on each occasion, his Parole was revoked for various infractions. See, Government's Response to Bell's Petition for Writ of Habeas Corpus, at 1 ("Government's Response").

On April 21, 1999, United States Probation Officer Kimberly Grace ("Grace") informed the Parole Commission that, on April 6, 2000, the Petitioner had tested positive for cocaine, and she recommended that he be placed in a Community Corrections Center, as a special condition of Parole. Id. at 2. On April 20, 1999, the Petitioner agreed to the condition and, on April 27, 1999, the Parole Commission imposed that special condition, pursuant to 28 C.F.R. §2.40.[1] See, USPC Certification Attachments [Docket 11], Attachments 3 & 4.

[1]According to a letter from Grace to Sylvia Hall, who is an analyst with the Parole Commission, in accordance with the new condition, the Petitioner entered a Community Correction Center -- the Alpha House in Springfield, Missouri -- on May 3, 1999. See, USPC Certification Attachments [Docket 11], Attachment 5, at 2.

By letter dated June 23, 1999, Grace reported that the Petitioner had continued to violate the conditions of his Parole, and she requested that the Parole Commission issue a Parole Violator Warrant. Grace stated that, on May 3, 1999, when the Petitioner entered the Alpha House, which was his Community Correction Center, he again tested positive for cocaine. At that time, he reportedly admitted to having used cocaine. Assertedly, the Petitioner also later admitted to a police officer, on May 11, 1999, that he had used cocaine on April 30, 1999. Id. at Attachment 5. On June 29, 1999, the Parole Commission issued a Violator Warrant, which charged the Petitioner with associating with persons having a criminal record, or having engaged in criminal activity,[2] in addition to having used cocaine on April 30, 1999. Id. at Attachment 7. As a result, the Petitioner was arrested on July 13, 1999, and committed to the Green County Jail, in Springfield, Missouri.

On that same day, he was given a Preliminary Interview by Senior Probation Officer Jack Smith, in order to determine if probable cause existed for the alleged violations.[3] Id. at Attach-

---

[2]The Petitioner was allegedly associating with five individuals who had criminal records, although the Petitioner maintained that he either did not associate with the individuals, or was unaware that they had criminal records. See, USPC Certification Attachments, Attachment 8, at 3.

[3]During the Preliminary Interview, the Petitioner denied asso-
(continued...)

ment 8. The Petitioner had requested a local Revocation Hearing, if the Parole Commission found probable cause for the Parole violation charges, and he advised that he wanted three voluntary witnesses to appear on his behalf at the proceeding. Id. On September 1, 1999, the Parole Commission determined that there was probable cause for the alleged violations,[4] and that the Petitioner should be given a local Revocation Hearing.[5] Id. at 3.

On September 9, 1999, the Parole Commission asked the Bureau of Prisons ("BOP") to designate the Petitioner to the Medical Center for Federal Prisoners, in Springfield, Missouri, because the Marshals Service did not have sufficient resources to address the

---

[3](...continued) ciating with persons with criminal records, and denied using cocaine on April 30, 1999. The Petitioner did admit, however, that he had told a police officer that he had used cocaine on that date. See, USPC Certification Attachments, Attachment 8, at 3.

[4]It is not clear from the Record when the Petitioner was advised of the probable cause determination. Although there is a probable cause worksheet, which states that there was probable cause to proceed against the Petitioner, and which was signed by the Parole Commission on September 1, 1999, the letter to the Petitioner, which stated that the Parole Commission had determined that there was probable cause that he had associated with individuals with criminal records, and had used cocaine, was dated December 28, 1999. See, USPC Certification Attachments, Attachments 12 & 18.

[5]On August 23, 1999, the Parole Commission offered the Petitioner an expedited revocation procedure without an in-person Hearing, but the Petitioner declined the offer. See, USPC Certification Attachments, Attachments 10 & 11.

Petitioner's health needs.[6] Id. at Attachment 13. According to the letter, which requested the transfer, the Petitioner was scheduled for a local Revocation Hearing to be conducted on October 5, 1999. Id. The Petitioner was moved, however, before the Hearing could be held.

On October 7, 1999, Grace provided the Parole Commission with a supplemental violation report. According to that report, Grace had been advised, on October 2, 1999, that the Petitioner had been issued four traffic citations by the Missouri State Highway Patrol, on November 20, 1998. The four violations were as follows: 1) operating a motor vehicle while intoxicated; 2) consuming alcohol while operating a motor vehicle on a highway; 3) failure to drive on the right half of the roadway; and 4) failure to exhibit satisfactory evidence of insurance upon demand. Id. at Attachment 14.[7] As a result of this supplemental report, the Parole Commission

---

[6]Sometime in early 1998, the Petitioner had a stroke, leaving him with decreased balance, sight and memory. He was also diagnosed with Hepatitis C. See, USPC Certification Attachments [Docket 11], Attachment 3, at 2.

[7]Grace advised the Parole Commission that the Petitioner had informed another Probation Officer -- George Howard ("Howard") -- of the police contact on November 20, 1998, but he did not inform Howard that he had received any citations as a result of that contact. See, USPC Certification Attachments, Attachment 14.

added these new allegations to its previous Warrant. See, Government's Response, at 4.[8]

On December 3, 1999, the Parole Commission was advised by the BOP that the Petitioner had transferred from FCI Sandstone, to the Federal Medical Center, Rochester ("FMC Rochester"), on October 15, 1999, for medical evaluation/treatment.[9] The BOP stated that the Petitioner had been designated to FCI Sandstone for a Parole Revocation Hearing, but that his case was not heard because he had arrived after the Parole Hearing Examiner had departed the institution. The Parole Commission was further advised that the Petitioner had requested to have his Revocation Hearing be held at FMC

[8]Apparently, the Petitioner was not notified of the supplemental Warrant, or of the new charges, prior to his Revocation Hearing of January 10, 2000. See, Government's Supplemental Response Concerning Recent Actions By The United States Parole Commission in Bell's Case, at 3-4 ("Government's Supplemental Response").

[9]Between the time when the BOP requested that the Petitioner be moved from the County Jail to the Federal Medical Center in Springfield, Missouri, and October 15, 1999, when he arrived at FMC Rochester, the Petitioner was transferred from Springfield to Leavenworth, and from Leavenworth to Oklahoma. He was then transferred to Terre Haute, Indiana, and then to FCI Sandstone. See, USPC Certification Attachments, Attachment 19.

Rochester, and that he had now waived a local Hearing.[10] See, USPC Certification Attachments, Attachment 16.

The Petitioner's Revocation Hearing was held on January 10, 2000, at FMC Rochester. He was appointed counsel, and was represented at the Hearing. The Petitioner denied associating with persons who had a criminal record, but he admitted that he had used cocaine. His wife testified on his behalf at the Hearing, and he submitted favorable letters from two other individuals.[11] Id. at Attachment 19. The Petitioner advised the Hearing Examiner that he did have a driving while under the influence charge pending, but that he had entered into a plea agreement, and that the Court would be dismissing the charge, and the case would be resolved without a Judgment. Id. At the conclusion of the Hearing, the Hearing

---

[10]After the Petitioner waived a local Hearing, the Parole Commission changed the designation of the Petitioner's Hearing, on December 17, 1999, from a local Revocation Hearing to an Institutional Revocation Hearing. On December 28, 1999, the Parole Commission informed the Petitioner, by letter, that probable cause existed for the alleged violations, and that his Hearing would be held at a Federal institution. See, Government's Response, at 4. In the letter of December 28, 1999, the Petitioner was informed of the following charges: 1) Association with Person Having Criminal Record; and 2) Use of Dangerous and Habit Forming Drugs. See, USPC Certification Attachments, Attachment 18.

[11]Apparently, the two letters were from the individuals whom the Petitioner had previously wanted to call as voluntary witnesses, and there was also a letter from his wife, who was present, and who testified at the Hearing. See, USPC Certification Attachments, Attachments 20-22.

Examiner determined that there was insufficient evidence to support a finding that the Petitioner had associated with persons with a criminal record, but that the evidence did support a finding that he had used cocaine. Id. The Hearing Examiner recommended that a final decision be deferred 90 days, pending the receipt of the police report, and disposition, of the driving while under the influence charge. By Notice of Action dated February 2, 2000, the Hearing was continued for ninety days. Id. at Attachment 23.[12]

On April 27, 2000, prior to continuing the Revocation Hearing concerning the November of 1998 tickets, the Commission issued a decision, which revoked the Petitioner's Parole based upon his admission to the use of cocaine. See, Government's Supplemental Response Concerning Recent Actions by the United States Parole Commission in Bell's Case, at 3 ("Government's Supplemental Response"). The Commissioner deferred a final decision, concerning the possible forfeiture of time spent on Parole and re-parole, and continued the case for a Hearing to consider the traffic tickets of November of 1998. Id. The Hearing on the traffic tickets was

[12]On February 4, 2000, the Parole Commission requested that Grace provide further information concerning the pending traffic tickets of November 20, 1998. See, USPC Certification Attachments, Attachment 24. She provided the Parole Commission with copies of the tickets by letter dated February 7, 2000. Thereafter, the Parole Commission requested a narrative report of the traffic stop, which was received on April 14, 2000. See, Government's Supplemental Response, at 2.

eventually held on May 24, 2000. At that time, the Hearing Examiner found that there was insufficient evidence to conclude that the Petitioner had violated his Parole by driving while under the influence of alcohol, or by consuming alcohol while driving a motor vehicle. See, Motion to Supplement Petitioner's Reply to the Government's Supplemental Response with New Information as to the U.S. Parole Commission's Actions at the May 24, 2000 Supplemental Revocation Hearing, at 3. The Hearing Examiner did, however, find that there was adequate evidence to conclude that the Petitioner did violate his Parole with regard to the two other charges -- failing to drive on the right half of the roadway, and failing to exhibit satisfactory evidence of insurance upon demand. Id. at 5.

The Petitioner filed his current Habeas Petition on February 7, 2000. At that time, the Petitioner's specific allegations were that the Parole Commission unreasonably delayed a finding of probable cause -- and his requested Revocation Hearing -- beyond the time limits established by Title 18 U.S.C. §4214; that the Parole Commission did not provide adequate notice to the Petitioner regarding the Revocation Hearing of January 10, 2000; and that the Parole Commission could not revoke his Parole based on the cocaine usage because the Petitioner was previously punished for that offense. Since the Petitioner filed his initial Petition, he has inundated the Court with status reports on the progress of his

case, and he has alleged more violations by the Parole Commission, including an asserted failure to provide adequate notice with regard to the Hearing on the charges of the Supplemental Warrant dated October 20, 1999; a failure to provide timely notice of probable cause concerning the charges contained in the supplemental Warrant; and impermissibly revoking his Parole based upon a charge that was previously punished.[13] In contrast, the Government maintains that the Petition should be dismissed because the Petitioner has not exhausted his administrative remedies.

## III. Discussion

Of necessity, we first turn to threshold issue that arises from the Government's contention that the Petitioner has not exhausted his administrative remedies, and that, as a result, his Habeas Petition should be dismissed. In the case of a Parole Revocation, once the Parole Commission conducts a Hearing, and makes its decision on Revocation, a Petitioner then has an oppor-

[13]As noted, as a result of his Hearings of January 10, 2000, and of May 24, 2000, the Petitioner was found to have violated his Parole by using cocaine, by failing to provide proof of insurance, and by failing to drive on the right half of the roadway. The Hearing Examiner found that there was insufficient evidence to support the charge of unauthorized association with persons with a criminal record, and the two charges of driving while under the influence of alcohol. Therefore, we will not address the allegations concerning those three charges, as the Petitioner was not found to have violated his Parole on those bases and, therefore, he could not have been prejudiced by any action of the Parole Commission on those charges.

tunity to appeal the decision to the Commission's National Appeals Board, within thirty days of the decision. See, Title 18 U.S.C. §4215(a); 28 C.F.R. §2.26(a). Once a Petitioner files an appeal with the National Appeals Board, the Board has sixty days to respond to the appeal. See, Title 18 U.S.C. 4215(b); 28 C.F.R. §2.26.

In this case, the earliest that the Petitioner could have appealed to the National Appeals Board would have been April 27, 2000, when the Parole Commission issued its Notice of Action, which revoked the Petitioner's parole based upon his admitted use of cocaine. According to the Petitioner, he filed an appeal with the National Appeal Board on or about July 3, 2000, after he received the second Notice of Action, which was dated June 20, 2000, as to his Revocation Hearing of May 24, 2000.[14] Therefore, the National Appeals Board should have responded to the Petitioner's appeal on or about September 3, 2000. To this date, according to the Petitioner, the Board has not acted.[15] Therefore, although the

---

[14]Although it appears that the Petitioner did not attempt to exhaust his administrative appeal in a timely manner, as to the cocaine usage charge, since the Notice of Action was issued on April 27, 2000, and the Petitioner did not file his appeal until July 3, 2000, we will address his challenge to that charge, as the procedural history of the case intertwines that charge with others and, in any event, his challenge is meritless.

[15]The Government has not contested the Petitioner's contention (continued...)

Petitioner had not exhausted his administrative remedies at the time that he filed his Petition, it would be futile to dismiss his Petition on that basis, as he could simply refile the Petition, now that he has exhausted his administrative remedies. Accordingly, we turn to the merits of his Petition.

A. Standard of Review. Some years ago, our Court of Appeals joined the Third, Fourth, Sixth, and Ninth Circuits, in concluding that the judicial review of the decisions of the Parole Commission cannot be premised upon an abuse of discretion standard but, instead, must be limited to those determinations where the Parole Commission has "exceeded the scope of its discretion, violated the Constitution, or reached decisions so arbitrary and capricious as to amount to a violation of due process." Jones v. United States Bureau of Prisons, 903 F.2d 1178, 1183 (8th Cir. 1990); see also, United States v. Lawson, 155 F.3d 980, 983 (8th Cir. 1998); Larson v. United States, 907 F.2d 85, 86-87 (8th Cir. 1999). The same rule continues to apply today. Hutchings v. U.S. Parole Commission, 201 F.3d 1006, 1008-1009 (8th Cir. 2000)("Although we do not have jurisdiction to review the Commission's substantive decisions, we will review such decisions to determine whether the Commission exceeded its statutory limits.").

---

[15](...continued)
that he has now exhausted his administrative remedies.

Our preliminary inquiry, then, is to determine whether the decision of the Parole Commission involved the exercise of judgment among a range of possible choices or options -- in which case the Court would have no jurisdiction to review the decision -- or whether the decision involved a plain violation of a matter which did not admit of discretion or choice -- in which case the Court would have jurisdiction to conduct its review. See, Jones v. United States Bureau of Prisons, supra at 1183; see also, Edmundson v. Turner, 954 F.2d 510, 513 (8th Cir. 1992), cert. denied, 502 U.S. 1101 (1992); Wright v. United States Parole Commission, 948 F.2d 433, 435 (8th Cir. 1991), cert. denied, 503 U.S. 1009 (1992); Caporale v. Gasele, 940 F.2d 305, 306 (8th Cir. 1991).

B. Legal Analysis. Given the clear mandate of Congress, that "the Commission's decisions to grant or deny parole are 'actions committed to agency discretion for purposes of [the judicial review provisions of the Administrative Procedure Act],'" we conclude that we are without jurisdiction to substitute our pronouncements, no matter how well-informed we may think them to be, for the parole eligibility determinations of the Parole Commission. Edmundson v. Turner, supra at 512, quoting Title 18 U.S.C. §4218(d). Should, however, the Parole Commission's decision violate an explicit requirement of the Parole Act, the Parole Commission's implementing Regulations, or the Constitution, we are not powerless to

act. Id. at 513, quoting Jones v. United States Bureau of Prisons, supra at 1184 n. 15. We, therefore, turn to the Petitioner's contention that the Parole Commission has violated it's own Regulations, and has deprived him of his right to due process of law.

1. The Timeliness of the Probable Cause Determination and Revocation Hearing.

The Petitioner contends that the Parole Commission did not provide him with a timely determination of probable cause, with respect to his original Warrant, and to his Supplemental Warrant of October 20, 1999, and that it did not conduct the Revocation Hearing within the statutorily mandated time-frame. The Parole Commission is bound to follow its own Regulations which, once established, have the force of law. See, e.g., Vargas v. United States Parole Commission, 865 F.2d 191, 194 (9th Cir. 1988). "However, 'technical and nonprejudicial variances in parole revocation proceedings do not rise to constitutional violations.'" Hutchings v. U.S. Parole Commission, supra at 1009, quoting Perry v. U.S. Parole Commission, 831 F.2d 811, 813 (8th Cir. 1987), cert. denied, 485 U.S. 963 (1988).

The Parole Commission's Regulations provide that a preliminary interview of a parolee, who is retaken on a parole violator Warrant, in order to determine whether there is probable cause to believe that the parolee has violated his Parole as charged, should

be held without unnecessary delay. See, Title 18 U.S.C. §4214(a)(1)(A); 28 C.F.R. §2.48(a). At the conclusion of the preliminary interview, the interviewing officer is required to inform the parolee of the recommendation the officer intends to make to the Parole Commission as to probable cause, and to submit to the Parole Commission a summary of the interview together with the recommendation. See, 28 C.F.R. §2.48(d). If the interviewing officer recommends a finding of probable cause, the Regional Commissioner is required to notify the parolee of the Parole Commission's final decision as to probable cause within 21 days of the date of the preliminary interview. See, 28 C.F.R. §2.48(d)(2). In the event that a finding of probable cause is made, and the parolee requests a local Revocation Hearing, that Hearing must be scheduled, and held, within 60 days of the probable cause determination. See, 28 C.F.R. §2.49(e).

In this case, the Petitioner complains, and the Respondents do not contest, that almost two months passed, from the time of his preliminary interview until a finding of probable cause was officially made by the Parole Commission, and that more than six months expired from the time that the Petitioner was taken into custody until his Revocation Hearing was held. Thus, the Parole Commission clearly violated its Regulations as to the timing of the Petitioner's probable cause determination, and of his Revocation Hearing.

The Petitioner's Preliminary Hearing was conducted on July 13, 1999. Since the interviewing officer recommended a finding of probable cause, the Parole Commission should have made its final decision, as to probable cause, by August 4, 1999. 28 C.F.R. §2.48(d)(2). Yet, the Petitioner was not advised of the Parole Commission's finding of probable cause until, at the earliest, September 1, 1999.[16] Moreover, logic dictates that the 60-day period, within which a parolee's requested Revocation Hearing must be conducted, should be measured from the date on which probable cause should have been determined -- here August 4, 1999 -- rather than on the date on which probable cause was found -- September 1, 1999. Therefore, the Parole Commission should have scheduled, and conducted, the Petitioner's local Revocation Hearing by early November of 1999. See, e.g., Bailey v. United States Parole Commission, 1993 WL 359951 at *1 (N.D. Ill. 1993). The Petitioner's Revocation Hearing was not conducted until January 10, 2000, which is approximately six months after he was recommitted, pursuant to the violator Warrant, and more than two months after the date on which he was entitled to have his Revocation Hearing.

---

[16]As stated earlier, the Record is unclear as to when the Petitioner was officially notified of the finding of probable cause. See, discussion supra n.4.

Although it is clear that the Parole Commission exceeded the time limitations established by its Regulations, those circumstances, standing alone, do not entitle the Petitioner to Habeas relief. Even where a violation of a Parole Commission's Regulation is shown, it is well-established that a due process violation may be found only when the complaining party shows that the Parole Commission's delay, in holding the Revocation Hearing, was unreasonable and prejudicial. See, Hutchings v. U.S. Parole Commission, supra at 1009; Vargas v. United States Parole Commis-sion, supra at 194, citing Sutherland v. McCall, 709 F.2d 730, 732 (D.C. Cir. 1983); see also, Donn v. Baer, 828 F.2d 487, 490 (8th Cir. 1987), citing Heath v. United States Parole Commission, 788 F.2d 85, 89-90 (2d Cir. 1986), cert. denied, 479 U.S. 953 (1986); Hanahan v. Luther, 693 F.2d 629, 630 (7th Cir. 1982); Cleveland v. Ciccone, 517 F.2d 1082, 1089 (8th Cir. 1975); Crum v. United States Parole Commission, 814 F. Supp. 1, 3 (D.D.C. 1993); Bailey v. United States Parole Commission, 769 F. Supp. 1025, 1029 (N.D. Ill. 1991) (regardless of the length of the delay, to receive relief from the Court, the petitioner must show that the delay was unreasonable and caused prejudice).

We are not insensitive to the length of the Parole Commission's delays, or to the Petitioner's understandable concern that his interests be heard and considered promptly. Cf., Sherman v.

Hirshman, 427 F. Supp. 12, 14 (D. N.J. 1976); Cleveland v. Ciccone at 1089. Nevertheless, in the absence of evident prejudice, such delays do not warrant his immediate release from custody. See, Donn v. Baer, supra at 490. Aside from a number of conclusory statements -- to the effect that the delay involved was prejudicial in and of itself -- the Petitioner has not presented this Court with any evidence that the delay was created by the Parole Commission in bad faith, or that the delay adversely affected his ability to adequately present a defense before the Parole Commission.[17] See, e.g., Heath v. United States Parole Commission, supra. Although the Petitioner claims that he was unable to present his defense, and his voluntary witnesses, with respect to his unauthorized association with persons having a criminal record, the Parole Examiner determined that there was insufficient evidence to find that the Petitioner violated his Parole in that regard. See, USPC Certification Attachments, Attachment 19. Therefore, the delay certainly did not prejudice his defense with respect to that allegation. Moreover, although the Parole Examiner did find sufficient

[17]In fact, although not entirely clear as to why the Petitioner has been moved around so frequently, it appears that the Parole Commission attempted to provide him with a Revocation Hearing on a number of occasions, but failed because he was transferred to a different location. Furthermore, once the Petitioner was moved transferred to FMC Rochester, he decided to waive his right to a local Hearing, and asked for an institutional Hearing, which was granted on January 10, 2000.

evidence to determine that the Petitioner had used cocaine on April 30, 1999, the Petitioner admitted the truth of this allegation, both at the Hearing, and to a police officer, in May of 1999. Id. at Attachments 5 & 19. Having admitted to the same, the Petitioner cannot now claim that he was prejudiced with respect to that allegation because of the delay in the conduct of the Hearing.

In this respect, the conclusion we reach is entirely consistent with the legislative history which underlies the creation and operation of the Parole Commission, and which provides as follows:

> The legislative history of the Parole Commission and Reorganization Act of 1976, * * * reveals that the remedy which Congress contemplated for the Commission's failure to comply with statutory time limits was not release from confinement but a writ of mandamus to compel compliance.

Donn v. Baer, supra at 490, quoting Heath v. United States Parole Commission, supra at 89; see also, 122 Cong.Rec. S 2572, 2573 (daily ed. March 2, 1976)(statement of Sen. Burdick)("The legislation establishes certain deadlines for the Commission's decision making, but the conferees acknowledge that from time to time extraordinary reasons may result in delay in making any of the decisions" and, "[i]f a legal remedy is necessary in the absence of good faith effort on the part of the Commission, the remedy available to the prisoner or parolee is to compel the decision, not release from custody."); Sutherland v. McCall, supra.

Here, the Parole Commission has already conducted the Petitioner's Revocation Hearing, albeit after some delay, and a need for mandamus is plainly mooted. As a consequence, the Petitioner has received all of the relief to which he is entitled, and we recommend that this aspect of his Petition be dismissed.

2. The Notices Provided Prior to the Revocation Hearings.

For his second contention, the Petitioner argues that he did not receive notice of the Hearings of January 10, 2000, and of May 24, 2000, in a timely fashion, and, therefore, he was not afforded adequate time to prepare his defense. The contention fails for much the same reason as did his first contention.

The Supreme Court has determined that notice of Parole violation charges must be provided to an individual. See, Morrissey v. Brewer, 408 U.S. 471, 489 (1972). To that end, Title 18 U.S.C. §4214(e), and 28 C.F.R. §2.48, both require the Parole Commission to provide an individual with a final decision, regarding a probable cause determination, within twenty one days after the preliminary interview. Moreover, 28 C.F.R. §2.50(d) states that "all evidence upon which the finding of violation may be based shall be disclosed to the alleged violator at or before the revocation hearing." The Petitioner claims that he was not provided sufficient notice, or evidence, prior to either the Hearing of January 10, 2000, or that of May 24, 2000.

With respect to the Hearing of January 10, 2000, it appears that the Petitioner was sent a letter, concerning the finding of probable cause on the charges of associating with individuals with criminal records, and of cocaine usage, on December 28, 1999. Ac-

cording to the Record before us, he was also provided with a collection of the evidence on which the charges were based. See, USPC Certification Attachments, Attachment 18. As already discussed, it is unclear whether he was notified of the probable cause determination prior to December 28, 1999. The Petitioner was apprised of the charges, however, during the Preliminary Interview of July 13, 1999, and he was told, by his Probation Officer, that he was recommending that the Commission find probable cause for both charges.

Moreover, even assuming that the official notification should have been provided earlier, as the Petitioner claims, the Record is clear that he was able to present a defense to the charges at the January Hearing -- he presented a voluntary witness, as well as letters on his own behalf -- and he was able to convince the Hearing Examiner that there was not enough evidence as to his association with persons with criminal records charge. More importantly, earlier notice would not have affected the cocaine usage charges, as the Petitioner admitted their accuracy. As a consequence, although official notice of the charges against him could have been provided in a more timely fashion, the Petitioner was sufficiently apprised of those charges in order to allow him to defend himself against their validity and, having suffered no prejudice, the Petitioner's request for Habeas relief should be dismissed.

As to the charges involved in his Hearing of May 24, 2000 -- namely, the traffic tickets of November of 1998 -- the Government has conceded that it failed to provide the Petitioner with the supplemental Warrant of October 20, 1999, which outlined those charges, in a timely manner. See, Government's Supplemental Response, at 4. As noted, the Petitioner was provided notice of those charges by letter dated May 11, 2000. However, the Petitioner was the one who advised the Hearing Examiner of those charges, during the Hearing in January. At that time, the Hearing Examiner recommended that any decision on revocation be postponed until the Commission could gather evidence concerning the new charges. Therefore, the Petitioner actually knew, as early as January of 2000, that the issue of the tickets was going to arise for resolution. Moreover, the Petitioner admits that he was informed, by the Notice of Action of April 27, 2000, that the traffic tickets of November of 1998 were going to be considered. See, Petitioner's Reply to Respondents's Supplemental Response Concerning Recent Actions by the United States Parole Commission in Bell's Case, at 8.

As to these charges, the Hearing Examiner found that there was insufficient evidence to support the two alcohol related charges, but he found sufficient evidence for the other two traffic offenses -- that is, the failure to provide proof of insurance, and the

failure to drive on the right-side of the highway. Concerning these charges, the Petitioner had sufficient time to submit affidavits from his wife as to the insurance issue, and an affidavit signed by 30 people as to the allegedly hazardous condition of the interstate at the point where the Petitioner assertedly moved from his own lane. See, Motion to Supplement Petitioner's Reply to the Government's Supplemental Response with New Information as to the U.S. Parole Commission's Actions at the May 24, 2000, Supplemental Revocation Hearing, at 5. Clearly, the Petitioner had sufficient notice of the charges to advance a defense, and his only complaint is that his defense was unsuccessful. Of course, "challenges to the sufficiency of the evidence to support a revocation order is a substantive mater and non-reviewable." United States v. Lawson, supra at 983, citing Wright v. U.S. Parole Commission, supra at 435. Therefore, the Petition should be dismissed with regard to this claim as well.

3. The Propriety of Revoking the Petitioner Parole Based on the April 30, 1999, Admission of Cocaine Usage.

The Petitioner alleges that the Parole Commission violated its own Regulations by revoking his Parole based upon his admission of cocaine usage on April 30, 1999. Specifically, the Petitioner claims that he was previously punished for that same offense, by being placed in a Community Corrections Center. The

Petitioner was placed in a Community Corrections Center -- the Alpha House -- as a result of testing positive for cocaine use on April 6, 1999. See, USPC Certification Attachments, Attachment 3. According to his Probation Officer, after the Petitioner tested positive on April 6, she requested that he enter Alpha House as a special condition of his Parole. Id. The Petitioner agreed to enter Alpha House on April 20, 1999, and the Parole Commission approved of that special condition on April 27, 1999. Id. at Attachments 3 & 4.

Thereafter, on May 3, 1999, when entering Alpha House, the Petitioner again tested positive for cocaine use, and later admitted -- both to a Police Officer, on May 11, 1999, and to the Hearing Examiner, on January 10, 2000 -- to using cocaine on April 30, 1999. Id. at Attachments 5 & 19. It was at this point that the Parole Officer requested that a Violator Warrant be issued, and it is that violation which forms the basis for the Parole revocation. Id. at Attachment 19. Thus, contrary to what the Petitioner urges, his positive drug test of April 6, 1999, did not form a basis for revoking his Parole. Rather, the Petitioner's Parole was revoked because of his admission that he used cocaine on April 30, 1999. Accordingly, the Parole Commission did not violate its Regulation by revoking the Petitioner's Parole based upon his admission

of cocaine use on April 30, 1999, and, therefore, the Petition should be dismissed in its entirety.[18]

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Petition for a Writ of Habeas Corpus [Docket No. 1] be summarily dismissed.

2. That the Motion for Stay of Court proceedings [Docket 22] be denied.

3. That the Petitioner's Motion for Bond [Docket 23], be denied.

4. That the Petitioner's Motion for expedited Summary Judgment [Docket 30], be denied, as moot.

5. That the Petitioner's Motion for Release on Bail [Docket 31], be denied.

---

[18]The Petitioner also contends that the Parole Commission computed his sentence incorrectly, as it did not credit him for time spent in the Community Corrections Center, from May 3, 1999, to July 12, 1999. See, Motion for Release on Bail Immediately [Docket 31], at 2. However, the Petitioner's contention is also based on his mistaken belief that his Parole revocation was premised on the same conduct for which he was sent to the Community Corrections Center -- that is, the positive drug test of April 6, 1999. However, as we have already addressed, the Petitioner's Parole revocation was based on a subsequent drug test that proved positive, as well as his admission to drug use, and, therefore, the Petitioner's sentence computation objection is without merit, and his Motion for Release on Bail Immediately [Docket 31] should be denied.

6. That the Petitioner's Motion to Compel [Docket 33], be denied, as moot.

7. That the Petitioner's Motion to consolidate the Section 2241 petition, and the Parole Hearing [Docket 35], be DENIED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 13, 2000,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 13, 2000,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C.

§636 to review the transcript in order to resolve all of the objections made.